1   DAVID H. WEBER (*Pro Hac Vice*)
    dhw@lcojlaw.com
2   DAWN M. KORVER (SBN 156458)
    dmk@lcojlaw.com
3   LIEBMANN, CONWAY, OLEJNICZAK & JERRY, S.C.
    231 South Adams Street
4   Green Bay, Wisconsin 54301
    P.O. Box 23200
5   Green Bay, Wisconsin 54305-3200
    Telephone:  (920) 437-0476
6   Facsimile:  (920) 437-2868

7   Attorneys for Plaintiff
    KARLA MARIA OROZCO VILLALOBOS

8

9                  **UNITED STATES DISTRICT COURT**

10                **SOUTHERN DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| 12  KARLA MARIA OROZCO VILLALOBOS | **FIRST AMENDED COMPLAINT** |
| 13                  Plaintiff, | |
| 14            v. | **Docket No. 08-CV-0172-W-JMA** |
| 15  ACCESS NURSES, INC. a California corporation | |
| 16                  Defendant. | |

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT

Plaintiff, Karla Maria Orozco Villalobos ("Ms. Orozco"), by her undersigned counsel, alleges as follows:

### PARTIES

1.      Ms. Orozco is a Costa Rican national born in San Jose, Costa Rica.  Ms. Orozco currently resides at 107 Woodhaven Way, Durango, Colorado 81303.

2.      Ms. Orozco has resided in the United States since November 1, 2005, when she entered on a B1-B2 visa with Arrival / Departure Record I-94 #: 986452024-11.  She became a licensed physical therapist in Colorado, effective July 19, 2006, and maintains license no. 9300.

3.      Access Nurses, Inc. ("Access") is a California corporation with its principal place of business at 5935 Cornerstone Court West, Third Floor, San Diego, California 92121.

4.      Upon information and belief, and among other things, Access is engaged in the business of recruiting and employing qualified physical therapists and contracting in turn with health care facilities to provide physical therapist professional services.  Further, Access provides immigration consulting services and sponsors international physical therapist candidates for pursuing employment in the United States of America.

### JURISDICTION AND VENUE

5.      Pursuant to 28 U.S.C. §§ 1332, this Court has jurisdiction over this matter.  The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.

6.      This Court has personal jurisdiction over Defendant.  Upon information and belief, Defendant is incorporated and conducts its business in this judicial district and at all relevant times committed acts complained of here in this District.

7.      Venue is proper in this Court under 28 U.S.C. § 1391.

### CASE OVERVIEW

2

8.      In and around 2006, Access recruited Ms. Orozco by promising to provide responsible immigration consulting services, to sponsor her immigration for employment in the United States of America, and to pay for various costs associated with immigrating to the U.S. including but not limited to paying for immigration attorneys to provide legal advice through the process.

9.      Access has reneged on virtually all of its promises to Ms. Orozco and totally failed to appropriately handle the submission of her immigration filings, the most serious of which have imperiled her ability to lawfully live and work in the U.S. long-term.

10.     Upon information and belief, Access apparently never planned to hire immigration counsel to assist with the legal issues attendant to Ms. Orozco immigrating.

11.     Up to and including the date of this case's filing, Access has maintained that Ms. Orozco is "in status" meaning that she is lawfully residing in the United States.

12.     Even after major and complex legal issues arose, Access feigned as if it had appropriate legal advice to substantiate its direction to Ms. Orozco to remain in the U.S., repeatedly misinformed her about her current legal status, and failed to adequately advise her regarding her rights and responsibilities attendant to her particular circumstances.

13.     As a result, Ms. Orozco has been unable to continue her career profession, may have remained in the U.S. beyond her authorization, and may have imperiled her ability to work in the U.S. for the indefinite future.  In addition to all economic loss, this has caused Ms. Orozco emotional distress, and resulting physical harm, pain and suffering in an amount to be determined at trial.

## **FACTS OF THE CASE**

14.     Ms. Orozco was originally trained as a physical therapist in Costa Rica in 2000.

FIRST AMENDED COMPLAINT

15.     As part of her efforts to receive training and certification in the U.S., in May, 2005, the Foreign Credentialing Commission on Physical Therapy ("FCCPT") issued Ms. Orozco a "Visa Labor Certification".  During the months that followed, Access recruited Ms. Orozco by representing that it was qualified to provide immigration consulting services and offered to sponsor her for a United States permanent employment visa and permanent residency as soon as possible.

16.     Ms. Orozco passed her NPTE examination in April 2006.  The State of Colorado issued her a license effective July 19, 2006.

17.     While Ms. Orozco waited to receive her Colorado license, Access continued to represent that it would promptly provide her competent and complete legal immigration consulting services once she obtained her license and signed her contract with Access.

18.     In August 2006, Access represented to Ms. Orozco that if she signed the contract Access would be able to provide her with immigration consulting and legal services and have her immigration paperwork processed so quickly that she would have a work permit within 30-90 days of signing.

19.     In August 2006, Access represented to Ms. Orozco that she would receive a permanent residence, commonly known as her Green Card within one year of signing the Access contract.

20.     As part of its continuing effort to recruit and induce Ms. Orozco to enter into a contractual relationship with it, Access provided Ms. Orozco with a proposed contract containing explicit promises and guarantees listing what Access would promise if Ms. Orozco would agree to her part and work with Access.

21.     Among others, an authorized Access agent named Jennifer Culbertson communicated frequently with Ms. Orozco prior to and after she executed the Access contract.

4

22.    Ms. Culbertson made representations to Ms. Orozco as listed above.

23.    Representations of this kind continued until on or about September 6, 2006, when Ms. Orozco signed the Access contract in reliance on Access' representations and returned it to Access promptly.

24.    In deciding to sign the Access contract, Ms. Orozco also relied on promotional statements listed on Access' website and public statements concerning its fitness to assist professionals through the immigration process.

25.    Access continued to provide Ms. Orozco immigration consulting services and provided her with an immigration checklist for adjustment of status.

26.    On or about September 10, 2006, Ms. Orozco corresponded with Access and advised Access that she had obtained an extension of stay under her current nonimmigrant status so that her legal presence in the U.S. would be valid until October 31, 2006.

27.    Over the next several weeks, Access continued to provide immigration consulting services and the parties worked to assemble the necessary information for submitting Ms. Orozco's immigration paperwork.

28.    By October 25, 2006, Access had completed immigration forms identified as I-140 (Immigrant Petition for Alien Worker), I-485 (Petition for Permanent Residence or Adjustment of Status), and I-765  (Application for Employment Authorization) on Ms. Orozco's behalf, worked with her to assemble all supporting documentation, and submitted all the materials to the United States Custom and Immigration Services ("USCIS").

29.    If Access would have properly submitted the filings and provided checks in the correct amount on behalf of Ms. Orozco, USCIS would have accepted the fillings and Ms. Orozco would have been authorized to begin work within a matter of several weeks or months.  However,

FIRST AMENDED COMPLAINT

1  USCIS had to return the submissions, and rejected them because Access submitted them with the

2  wrong fees.

3        30.      Access did not resubmit the forms to USCIS for processing until mid-December

4  2006, however by this time, upon information and belief, Ms. Orozco was out of status and

5

6  USCIS had instituted a period of retrogression limiting visa availability.

7        31.      By or about January 16, 2007, USCIS accepted the I-140 form, but returned

8  without accepting forms I-485 and I-765 for the reasons stated above.

9        32.      On or about January 16, USCIS sent a receipt notice of I-140 to Access in relation

10 to the I-140.  However, Access intentionally, or by gross recklessness or negligence, lost the

11 document and has since failed to retrieve a copy even though Ms. Orozco has repeatedly

12

13 requested that she be provided with a copy for her records.

14        33.      Despite being aware that Ms. Orozco's legal stay in the U.S. under a

15 nonimmigrant status had expired, and in response to Ms. Orozco concerns and inquires regarding

16 her current status, Access repeatedly advised Ms. Orozco in 2006 and thereafter that she was and

17 now remains "in status," meaning she was and is legally present within the United States.

18        34.      Access pretended to be so confident that Ms. Orozco was "in status," without

19 retaining or consulting an immigration lawyer, that it even went so far as to threaten Ms. Orozco

20

21 (in response to her concerns over whether she should remain in the United States) that if she left

22 the U.S. she would breach her contract and risk owing Access the money it had expended on her

23 immigration filing fees to date.

24        35.      Whether Ms. Orozco was "in status" at any given time between November 2006

25 and the time of filing this Complaint is a legal question that reasonably warrants consultation with

26

27 an immigration attorney.

28

FIRST AMENDED COMPLAINT

36.    On several instances while Ms. Orozco lamented over her situation and pleaded with Access for advice, Access advised Ms. Orozco that information she had reported receiving from immigration officers from a legal perspective was incorrect and that Access knew better what Ms. Orozco needed to do.  This included but was not limited to an email sent to Ms. Orozco March 6, 2007.

37.    In a June 12, 2007 bulletin, USCIS indicated that visas were available, but Access failed to diligently or reasonably monitor the situation.

38.    Access did not advise Ms. Orozco of the availability of these visas pursuant to this bulletin until June 28, 2007.

39.    Access did not submit Ms. Orozco's forms again until August 6, 2007, after which time USCIS again returned the forms due to errors made by Access including, but not limited to, submitting them again with the wrong fees.

40.    Access asked Ms. Orozco to continue the process and allow it to again submit her forms to USCIS.

41.    In or about November 2007, concerned about the length of delays, improper filings, and confusing immigration status issues attendant with her then-outdated legal permission to stay in the U.S., Ms. Orozco used her own personal funds to retain legal immigration counsel to apprise her of her current situation.

42.    In mid-November 2007, Ms. Orozco's counsel wrote Access and attempted to mitigate damages by coming up with a plan to address her legal immigration issues.

43.    Shortly thereafter, Access confirmed that it had never retained any lawyer to provide advice relative to Ms. Orozco's immigration issues.  Access promised to retain immigration counsel to come up with a well-informed plan going forward.

44.    Ms. Orozco continued to wait to see if Access would follow through on its word.

FIRST AMENDED COMPLAINT

45.     Unfortunately, waiting until December 2007 did not result in appropriate action by Access, at which time Access reneged on its commitment and stood by its "immigration consultant" who was not a lawyer and who in turn had not consulted legal counsel, to apprise Ms. Orozco that she was still "in status" and essentially had nothing to worry about.

46.     At that time, however, Access also expressly refused to reimburse Ms. Orozco for any of the expenses and costs listed in the parties' contract entered into some fifteen months earlier.

**The Access Contract Entitled "Access Nurses Sponsorship Agreement"**

47.     The Access Agreement is dated September 6, 2006.

48.     Pursuant to the Agreement, Ms. Orozco agreed to be sponsored and ultimately employed as a physical therapist by Access for a two year term.

49.     Among other things, Access promised to pay in a timely manner certain fees and expenses associated with Ms. Orozco obtaining licensure and immigrating to the United States, including but not limited to her:

        a.    "**NPTE exam**";

        b.    "**Visa Screen Certificate**";

        c.    "**Immigration filing fees/attorney fees**";

        d.    "**Postage for documents**";

        e.    "**Training materials for NPTE**";

        f.    "**Final air fare to the USA**";

        g.    "**Housing**"; and

        h.    "**Benefits**".

50.     To date, Access has paid none of these expenses and, despite demand, has expressly refused to pay them.

8

51.     As of the date of this filing, Access has not retained or consulted an immigration attorney to assist in Ms. Orozco immigration efforts.

52.     To date, Access has not paid for her immigration attorney fees.

53.     To date, Access has not reimbursed Ms. Orozco for the exam fees and expenses associated with completing the NPTE exam.

54.     To date, Access has not paid for Ms. Orozco's visa screen certificate.

55.     To date, Access has not properly paid for all of Ms. Orozco's filing fees.

56.     To date, Access has not paid for the postage Ms. Orozco paid to transmit documents.

57.     To date, Access has not paid for the training materials associated with the NPTE.

58.     To date, Access has not reimbursed Ms. Orozco for her final air fare to the U.S.

59.     To date, Access has not paid for the housing expenses associated with Ms. Orozco taking, and completing the NPTE, and living in the U.S. while Access has allegedly attempted to sponsor her and while she awaited promised employment.

60.     To date, Access has not paid for Ms. Orozco's benefits or provided any benefits for Ms. Orozco while she has been living and waiting in the U.S.

61.     Access has utterly failed to properly support Ms. Orozco's immigration efforts by failing to timely and properly submit Ms. Orozco immigration filings, by failing to timely and properly keep Ms. Orozco apprised of the status of her application or the availability of visas, by failing to provide critical information regarding her application or regarding her immigration status and advice on how to lawfully immigrate, and otherwise by failing to exercise the level of appropriate care and diligence commensurate with the obligations it undertook.

9

62.   Upon information and belief, Access had no intention of carrying out its contractual obligations as set forth above, and in fact, made its representations to induce Ms. Orozco into a contractual relationship and "lock" her in so she had no other options.

## COUNT 1

### (Breach of Contract)

63.   Ms. Orozco hereby alleges and incorporates by reference each and every allegation contained in all paragraphs above, inclusive, as though fully set forth in detail herein.

64.   Access drafted the "Access Nurses Sponsorship Agreement" it provided to Ms. Orozco and that she signed September 6, 2006.  It is an express contract.

65.   Access has breached the contract as described above.

66.   Ms. Orozco has suffered damages pursuant thereto in an amount to be determined at trial which include but are not limited to lost income from working as a professional physical therapist beginning 30-90 days after signing her Access contract in September 2006, lost future income attendant with her status and stay (as a result of potential penalties from immigration laws including ban from re-entry into the U.S. for a period of ten years), lost earning capacity (as a result of professional development delays and lost opportunities from U.S. employment), out of pocket expenses promised by Access per its contract, as well as emotional distress, and resulting physical harm, pain and suffering in an amount to be determined at trial.

## COUNT 2

### (Fraudulent Concealment )

67.   Ms. Orozco hereby alleges and incorporates by reference each and every allegation contained in all paragraphs above, inclusive, as though fully set forth in detail herein.

68.   Upon information and belief, Access made misrepresentations and purposeful omissions to Ms. Orozco as indicated above to induce her to enter into a contractual relationship with it and did so with the full knowledge that it had no intention of complying with its

obligations. These acts caused Ms. Orozco to unknowingly and unwillingly forfeit her rights to seek other sponsorship and employment in the U.S., and created her current predicament.

69.     Access had a duty to disclose to Ms. Orozco its true intentions when inducing her to enter into the contract.

70.     Access misrepresented that it would promptly draft, assemble, and submit Ms. Orozco's application materials once she signed the contract and failed to apprise her that her submissions would be delayed by low priority once she signed and that it had absolutely no intention of consulting an immigration attorney as needed throughout the process for which it agreed to undertake.

71.     Access undertook a duty to inform and advise Ms. Orozco of the full, true and accurate legal information important to her immigration status throughout the process from September 2006 to the time of this filing knowing it had no intention of properly carrying out its obligations.

72.     Since discovering its series of errors and missteps in handling Ms. Orozco's application, Access has only attempted to cover itself and its wrongdoing by misrepresenting to Ms. Orozco details about its efforts to assist her and about her immigration status, all of which increased the probability that Ms. Orozco's future ability to immigrate would be jeopardized under long-lasting penalties existing through established immigration law.

73.     By this fraud, Ms. Orozco suffered damages pursuant thereto in an amount to be determined at trial which include but are not limited to lost income from working as a professional physical therapist beginning 30-90 days after signing her Access contract in September 2006, lost future income attendant with her status and stay (as a result of potential penalties from immigration laws including ban from re-entry into the U.S. for a period of ten years), lost earning capacity (as a result of professional development delays and lost opportunities

from U.S. employment), out of pocket expenses promised by Access per its contract, as well as emotional distress, and resulting physical harm, pain and suffering and exemplary damages in an amount to be determined at trial.

## COUNT 3

### (Breach of Fiduciary Duty)

74.     Ms. Orozco hereby alleges and incorporates by reference each and every allegation contained in all paragraphs above, inclusive, as though fully set forth in detail herein.

75.     Through their words and course of conduct, the parties entered into a relationship as co-partners in fact in the fall of 2006 in that they agreed to both contribute money and/or services to the joint plan to pursue Ms. Orozco's lawful immigration and employment in the United States ("the venture").  Further, the parties entered into an express or implied contract to maintain some joint proprietorship, mutual control, and shared profits from the venture.

76.     Access thus owed Ms. Orozco a fiduciary duty to promote the venture and avoid conduct that was detrimental to her interests.  These duties included, but are not limited to, the duty of loyalty, the duty of disclosure, and the duty of care.  By the acts and omissions described above, Access breached its fiduciary duties to Ms. Orozco.

77.     By these breaches of fiduciary duties, Ms. Orozco suffered damages pursuant thereto in an amount to be determined at trial which include but are not limited to lost income from working as a professional physical therapist beginning 30-90 days after signing her Access contract in September 2006, lost future income attendant with her status and stay (as a result of potential penalties from immigration laws including ban from re-entry into the U.S. for a period of ten years), lost earning capacity (as a result of professional development delays and lost opportunities from U.S. employment), out of pocket expenses promised by Access per its

FIRST AMENDED COMPLAINT

contract, as well as emotional distress, and resulting physical harm, pain and suffering and

exemplary damages in an amount to be determined at trial.

## <u>COUNT 4</u>

### (Misrepresentation/Intentional/Negligence/Strict Liability)

78.     Ms. Orozco hereby alleges and incorporates by reference each and every allegation

contained in all paragraphs above, inclusive, as though fully set forth in detail herein.

79.     One or more of the representations made above were done with intent to deceive

defraud and/or mislead.

80.     Alternatively, one or more of the representations made above were done

negligently.

81.     In addition to those identified above, Access misrepresented to Ms. Orozco that it

was experienced, authorized, and capable of shepherding and petitioning a change in status

application as well as quickly obtaining permission for Ms. Orozco to work in the United States.

82.     Access' misrepresentations made to Ms. Orozco were untrue.

83.     Ms. Orozco relied upon Access' misrepresentations to her detriment.

84.     Access had an economic interest in making misrepresentations to Ms. Orozco to

avoid responsibility for its conduct.

85.     As a result of Access' misrepresentations, Ms. Orozco suffered damages pursuant

thereto in an amount to be determined at trial which include but are not limited to lost income

from working as a professional physical therapist beginning 30-90 days after signing her Access

contract in September 2006, lost future income attendant with her status and stay (as a result of

potential penalties from immigration laws including ban from re-entry into the U.S. for a period

of ten years), lost earning capacity (as a result of professional development delays and lost

opportunities from U.S. employment), out of pocket expenses promised by Access per its

FIRST AMENDED COMPLAINT

1    contract, as well as emotional distress, and resulting physical harm, pain and suffering and

2    exemplary damages in an amount to be determined at trial.

3    <u>**COUNT 5**</u>

4    **(Action Under Business and Professions Code Division 8, Chapter 19.5, § 22446.5)**

5
6        86.    Ms. Orozco hereby alleges and incorporates by reference each and every allegation

7    contained in all paragraphs above, inclusive, as though fully set forth in detail herein.

8        87.    Access and its agents acted as Immigration Consultants under Business and

9    Professions Code Division 8, Chapter 19.5 § 22441(a)(1) when it completed forms provided by

10   INS for Ms. Orozco.

11       88.    Access acted as an Immigration Consultant under Business and Professions Code

12   Division 8, Chapter 19.5 § 22441(a)(4) when, in October 2006, it submitted completed forms on

13   Ms. Orozco behalf and at her request to USCIS.

14
15       89.    Access acted as an Immigration Consultant under Business and Professions Code

16   Division 8, Chapter 19.5 § 22441(a)(4) when, in January 2007, it submitted completed forms on

17   Ms. Orozco behalf and at her request to USCIS.

18       90.    Access acted as an Immigration Consultant under Business and Professions Code

19   Division 8, Chapter 19.5 § 22441(a)(4) when, in August 2007, it submitted completed forms on

20   Ms. Orozco behalf and at her request to USCIS.

21
22       91.    Access acted as an Immigration Consultant under Business and Professions Code

23   Division 8, Chapter 19.5 § 22441(a)(5) when it made referrals to its agents (e.g., Culbertson) with

24   the implied suggestion that she could and would assist in legal representation activities for Ms.

25   Orozco in her immigration matter.

26       92.    Access violated Business and Professions Code Division 8, Chapter 19.5 §

27   22441(a), (d) each time it gave legal advice to Ms. Orozco that she was "in status" and could

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

lawfully remain in the United States even though her legal stay nonimmigrant status authorization had expired. This included, but is not limited to, November 7, 2006, March 6, 2007, April 1, 2007, October 1, 2007, and November 5, 2007.

93.     Access violated Business and Professions Code Division 8, Chapter 19.5 § 22441(a), (d) each time it gave legal advice to Ms. Orozco that she need not worry about her immigration status or otherwise provided erroneous information to Ms. Orozco regarding the on-going process. This included, but is not limited to, November 7, 2006, December 4, 2006, December 15, 2006, December 18, 2006, January 19, 2007, March 6, 2007, June 28, 2007, June 29, 2007, June 30, 2006, July 2, 2007, October 1, 2007, and November 5, 2007.

94.     Upon information and belief Access violated Business and Professions Code Division 8, Chapter 19.5 § 22441.1 by failing to pass a background check conducted by the Secretary of State. Access is not listed on the Secretary's website at http://www.sos.ca.gov/business/sf/sf_contacts.htm

95.     Access violated Business and Professions Code Division 8, Chapter 19.5 § 22442 by failing to provide Ms. Orozco with a written contract that complied with Department of Consumer Affairs regulations in that the contract failed to describe in reasonable detail the services to be performed.

96.     Access violated Business and Professions Code Division 8, Chapter 19.5 § 22442 by failing to provide Ms. Orozco with a written contract that complied with Department of Consumer Affairs regulations in that the contract failed to describe in reasonable detail the cost of the services to be performed.

97.     Access violated Business and Professions Code Division 8, Chapter 19.5 § 22442 by failing to provide Ms. Orozco with a written contract that complied with Department of Consumer Affairs regulations in that the contract failed to include on the face of the contract or

15

any other communication in 10-point boldface type a statement that the immigration consultant is not an attorney and may not perform the legal services that an attorney performs.

98.    Access violated Business and Professions Code Division 8, Chapter 19.5 § 22442(b)(5) by failing to include its substantive requirements.

99.    Access violated Business and Professions Code Division 8, Chapter 19.5 § 22442(b)(6) by failing to include its substantive requirements.

100.    Access violated Business and Professions Code Division 8, Chapter 19.5 by failing to providing any of the written disclosures and required information pursuant to § 22442.2(b)(2).

101.    Access violated Business and Professions Code Division 8, Chapter 19.5 by failing to providing any of the written disclosures and required information pursuant to § 22442.2(b)(3).

102.    Access violated Business and Professions Code Division 8, Chapter 19.5 by failing to providing any of the written disclosures and required information pursuant to § 22442.2(b)(4).

103.    Access violated Business and Professions Code Division 8, Chapter 19.5 by failing to providing any of the written disclosures and required information pursuant to § 22442.2(c)(1).

104.    Access violated Business and Professions Code Division 8, Chapter 19.5 § 22442.4 by failing to comply with those requirements.

105.    Access violated Business and Professions Code Division 8, Chapter 19.5 § 22443(a) by failing to comply with those requirements in October 2006.

106.    Access violated Business and Professions Code Division 8, Chapter 19.5 § 22443(a) by failing to comply with those requirements in January 2007.

107.    Access violated Business and Professions Code Division 8, Chapter 19.5 § 22443(a) by failing to comply with those requirements in August 2007.

108.    Upon information and belief, Access violated Business and Professions Code Division 8, Chapter 19.5 § 22443.1 by failing to comply with those requirements.

16

109.    Upon information and belief, Access violated Business and Professions Code Division 8, Chapter 19.5 § 22443.3 by failing to comply with those requirements.

110.    Upon information and belief, Access violated Business and Professions Code Division 8, Chapter 19.5 § 22444 by assuring Ms. Orozco she would be working within 90 days.

111.    Upon information and belief, Access violated Business and Professions Code Division 8, Chapter 19.5 § 22444 by assuring Ms. Orozco she would have a green card within one year.

112.    Upon information and belief, Access violated Business and Professions Code Division 8, Chapter 19.5 § 22444 by repeatedly assuring Ms. Orozco she was "in status."

113.    Upon information and belief, Access violated Business and Professions Code Division 8, Chapter 19.5 § 22444 by advising Ms. Orozco that she could not leave the U.S. prior to completion of her adjustment of status.

114.    While this action currently seeks damages on behalf of Ms. Orozco due to counsel's difficulty in pressing an injunction, Ms. Orozco reserves the right to seek injunctive relief on behalf of herself as well as the general public to stop Access' non-compliance.

115.    To the extent allowed by Business and Professions Code Division 8, Chapter 19.5 § 22446.5, this action seeks treble damages or $1000 whichever is greater, for each violation of Chapter 19.5 governing Immigration Consultants, as well as attorneys' fees and costs.

116.    Given the above claim, Ms. Orozco is entitled to have this case set for trial at the earliest possible date, which "shall take precedence over all other cases, except older matters of the same character and matters to which special preference may be given by law." Id. § 22446.5(d).

117.    To the extent allowed by Business and Professions Code Division 8, Chapter 19.5 § 22445, this action seeks damages and civil penalties not to exceed $100,000 for each violation of Chapter 19.5 governing Immigration Consultants, as well as attorneys' fees and costs. To the extent allowed by Business and Professions Code Division 8, Chapter 19.5 § 22445, the penalties should be highest due to the nature and seriousness of Access' misconduct, the number of violations, the persistence of the misconduct, the length of time over which the misconduct occurred, the willfulness of the misconduct, and the defendant's assets, liabilities, and net worth.

**COUNT 6**

**(Unfair Business Practices, Other)**

118.    Ms. Orozco hereby alleges and incorporates by reference each and every allegation contained in all paragraphs above, inclusive, as though fully set forth in detail herein.

119.    Access' conduct as described above violates California's unfair business practices (Bus. & Prof.Code, § 17200 et seq.) (UCL).

120.    Access' conduct as described above violates California's prohibition against false and misleading advertising (§§ 17200 et seq., 17500 et seq.).

121.    By these violations, Ms. Orozco was damaged as described above.

**COUNT 7**

**(Consumer Legal Remedies Act)**

122.    Ms. Orozco hereby alleges and incorporates by reference each and every allegation contained in all paragraphs above, inclusive, as though fully set forth in detail herein.

123.    Access' conduct as described above violates California's Consumer Legal Remedies Act (Civ. Code, § 1750 et seq.) (CLRA).

124.    By these violations, Ms. Orozco was damaged as described above.

**COUNT 8**

**(Unlawful Practice of Law)**

18

125.    Ms. Orozco hereby alleges and incorporates by reference each and every allegation contained in all paragraphs above, inclusive, as though fully set forth in detail herein.

126.    Access' conduct as described above violates California's prohibition against the unlawful or unauthorized practice of law.  (Business and Professions Code section 6125).

127.    By these violations, Ms. Orozco was damaged as described above.

## COUNT 9

### (Violation of Employment Agency Regulations)

128.    Ms. Orozco hereby alleges and incorporates by reference each and every allegation contained in all paragraphs above, inclusive, as though fully set forth in detail herein.

129.    Access acted as an Employment Agency as defined by Cal. Civ. Code § 1812.501

130.    Upon information and belief, during the period of 2006 to this case filing, Access did not follow the bonding and other regulations of Cal. Civ. Code § 1812.501, et seq., including but not limited to § 1812.503.

131.    Access did not comply with its employment agency contract as described above in violation of Cal. Civ. Code § 1812.523.

132.    Access made misrepresentations regarding the services it would provide and the employment opportunities it would provide for Ms. Orozco as described above in violation of Cal. Civ. Code § 1812.523.

133.    Access' violations were intentional, or alternatively grossly reckless or negligent.

134.    By these violations, Ms. Orozco was damaged as described above and is entitled to recover up to three times her damages and her attorneys fees in accordance with Cal. Civ. Code § 1812.523(d).

## COUNT 10

### (Negligence)

19

FIRST AMENDED COMPLAINT

135.    Ms. Orozco hereby alleges and incorporates by reference each and every allegation contained in all paragraphs above, inclusive, as though fully set forth in detail herein.

136.    Regardless of any and all contractual obligations, Access's course of conduct with Ms. Orozco gave rise to a duty of care which required that Access handle immigration services in a competent and reasonable manner.

137.    The duty of care, and breach of that duty, supports an action in tort.

138.    Access negligently performed by, among other things, failing to properly submit Ms. Orozk's USCIS immigration forms and fees, by failing to properly apprise Ms. Orozco on her immigration status, and by failing to properly provide advice to Ms. Orozco for handling immigration issues.

139.    As a result of Access' negligence, Ms. Orozco suffered damages in an amount to be determined at trial which include but are not limited to lost income from working as a professional physical therapist beginning 30-90 days after signing her Access contract in September 2006, lost future income attendant with her status and stay (as a result of potential penalties from immigration laws including ban from re-entry into the U.S. for a period of ten years), lost earning capacity (as a result of professional development delays and lost opportunities from U.S. employment), out of pocket expenses promised by Access per its contract, as well as emotional distress, and resulting physical harm, pain and suffering and exemplary damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Orozco prays for judgment against Access, on each cause of action herein, as follows:

A.    For damages as described above in a sum to be proven at trial;

B.    For interest on said sums from the earliest time permitted by law until the date of

judgment;

C.    For statutory, multiple, punitive and exemplary damages as allowed by law;

D.    For attorneys' fees and costs of developing and bringing this suit;

E.    For such other further relief as the Court may deem proper.

DATED:    August 26, 2008.

LIEBMANN, CONWAY, OLEJNICZAK & JERRY, S.C.

By: ___/s David H. Weber_____
David H. Weber
Attorneys for Karla Maria Orozco Villalobos

## **DEMAND FOR JURY TRIAL**

Ms. Orozco hereby demands a jury trial of all issues triable by a jury.

DATED:    August 26, 2008

LIEBMANN, CONWAY, OLEJNICZAK & JERRY, S.C.

By: ___/s David H. Weber_____
David H. Weber
Attorneys for Karla Maria Orozco Villalobos

*#378103*

21

FIRST AMENDED COMPLAINT